2006 JAN 17 AM 10: 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AUSTRALIAN GOLD, INC. )
)
Plaintiff, )
)
v. ) CASE NO.
)
CHARMI HALL, )
) 1:06-cv-0059-JDT-TAB
Defendant. )

**COMPLIANT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

Australian Gold, Inc., ("Australian Gold") by counsel, for its Complaint for Preliminary and Permanent Injunctive Relief and Damages against Charmi Hall ("Hall"), hereby states as follows:

**THE PARTIES**

1. Australian Gold is an Indiana corporation with its principal place of business located at 6270 Corporate Drive, Indianapolis, Indiana.

AUSTRALIAN GOLD, INC. v. HALL Doc. 1

2. Australian Gold is the manufacturer and exclusive distributor of Australian Gold®, Caribbean Gold® and Swedish Beauty® tanning lotions and other tanning related products ("Products"). Australian Gold's Products are considered premium tanning lotions in the indoor tanning industry and are sold to the majority of the over 25,000 tanning salons throughout the United States.

3. Australian Gold owns or is the licensee of registered and common law trademarks for the Australian Gold®, Swedish Beauty® and Caribbean Gold® brand names and the tanning lotions sold under those brands ("Marks"). A list of the federal registrations and applications for the Marks impermissibly used by Hall is attached hereto as *Exhibit A*.

4. Australian Gold maintains Internet websites at www.australiangold.com, www.swedishbeauty.com, and www.cgtan.com (collectively "Websites"). Australian Gold does not sell Products to the general public on the Websites. The Products are displayed on the Websites for informational purposes so that consumers interested may learn about the use and benefits of the Products. Consumers may then visit their local tanning salon where they will receive personal consultation and instruction and use on the appropriate Product for their skin type and tanning objectives.

5. Australian Gold owns the copyrights to all pictures, artwork and commentary of the Products displayed on the Websites.

6. Australian Gold has registered copyrights for the labels of the following products: Forever After, Cheeky Brown, Body Kisses, Bearly Legal, Unforgiven, Sun Dreams, Simply Divine, Pink Diamond and Free Spirit. True and correct copies of the federal registrations from the United States Copyright office are attached as *Exhibit B*.

7. Upon information and belief, Hall is a resident of the State of Indiana and resides at 6701-W Newburgh Road, Evansville, IN 47715.

8. Upon information and belief, Hall does business on the Internet and on ebay.com.

9. Upon information and belief, Hall changed her ebay user name from "Charmi 13" to "extremebargins4less" to avoid detection by Australian Gold.

10. Among other things, Hall sells the Products on ebay auctions, using Australian Gold's intellectual property, including its copyrights and trademarks. Hall's conduct has also caused damage to Australian Gold's distribution system and the reputation and goodwill of the Products and the company.

## JURISDICTION AND VENUE

11. This action includes claims for copyright infringement under 17 U.S.C. §101 *et seq*., trademark infringement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. §§1114, 1125(a), tortious interference with contract and business relationships, and state law claims for trademark infringement and conspiracy. This Court has original jurisdiction based on federal question jurisdiction pursuant to 28 U.S.C. §1331, and exclusive federal jurisdiction for trademark and copyright claims under 28 U.S.C. §1338. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

12. Venue is proper in the Southern District of Indiana because both Hall and Australian Gold reside within this district.

## AUSTRALIAN GOLD'S DISTRIBUTION SYSTEM

13. Australian Gold distributes the Products through independent distributors for resale to tanning salons and hair care salons that offer on-premises tanning and instruction on the use of the Products. For the reasons explained below, sales to beauty supply stores, flea markets, Internet sellers and other similar outlets are strictly prohibited. Distributors are prohibited from selling the Products to anyone outside of the distribution channel, including to those persons or entities that sell the Products on the Internet.

14. Australian Gold manufactures and sells approximately 80 different tanning lotions and products which vary in their use and purpose. Some products are not designed to be used on sensitive areas of the body such as the face; while other products are specifically designed to moisturize and protect the face. For example, Australian Gold manufactures and sells "tingle" products, tanning lotions that contains a skin irritant designed to increase blood flow and enhance the tanning process. This product is not intended for persons with fair skin. 'Bronzing" products are another type of product designed to provide a deeper tan. Proper instruction on the

use of the Products is paramount to consumer safety and satisfaction. If a person with the wrong skin type or novice tanner uses the wrong Product (i.e. a tingle product) it could create an adverse physical reaction affecting both the consumer and Australian Gold's reputation in the marketplace.

15. To ensure that its products are used properly and in a safe manner, Australian Gold places a significant emphasis on the training of its Products. In a typical year, Australian Gold trains over 30,000 employees, salon owners and managers in 600 presentations instructing them on the proper use of the Products.

16. Australian Gold implemented its current distribution strategy to (1) ensure that the end users of the Products received proper instruction and training on the use of the Products; (2) ensure the end user received face-to-face consultation with a trained salesperson so that the consumer purchased the correct Product based upon that person's skin type and tanning objectives; (3) ensure that the Products purchased and used by the consumer are used in a safe and proper manner since the Products are designed to achieve different results and not all Products are suited for all consumers; (4) protect the reputation and perception of the Products as premium products available only in tanning salons; and (5) allow for the opportunity to cross-sell other Products to the consumers, among other things.

17. Australian Gold has expended a substantial amount of time and effort to train its distributors and the tanning salons across the country, instructing them on the benefits of the Products and their intended use.

18. Australian Gold's current distribution system has increased and enhanced Australian Gold's sales and reputation in the marketplace. Australian Gold's sales have steadily

increased over the years as it has streamlined its distributors and enforced its distribution system limiting sales to tanning salons.

19. To ensure that its distribution system is properly maintained, Australian Gold requires all of its authorized distributors to enter into agreements that specifically define to whom the Products may be sold. A true and correct copy of the standard Distributorship Agreement that all authorized distributors are required to sign is attached hereto as *Exhibit C.*

20. Specifically, the Distributorship Agreements provide that Distributors may market, distribute and sell Products only to legitimate tanning salons and hair care salons that offer indoor tanning as an on-premises service and instruction on the use of the Products. (Distributorship Agreement, Art. 1.1(D) and (E)). The Distributorship Agreements prohibit the sale of Products to a reseller, like the Defendant, who intends to re-sell the Products on the Internet. (Distributorship Agreement, Art. 1.1(D) and (E)).

21. The Distributorship Agreements restrict the sale of Products to within the United States. (Distributorship Agreements, Art. 1.1(c)). This restriction is necessary for at least two reasons. First, Australian Gold has exclusive distributorship agreements with third parties in foreign countries. Thus, the restriction ensures that U.S. distributors do not infringe on territories outside of the United States. Second, many countries have certain labeling requirements, which if not followed could subject Australian Gold to substantial liability. The U.S. Products, therefore, are different from the products sold in foreign countries and sales of U.S. Products outside of the United States do not comport with Australian Gold's quality control standards or foreign laws.

22. The Distributorship Agreements require all Distributors to assist Australian Gold "in educating Distributor's sales staff and Customers with regard to the use and benefit of the

Products." (Distributorship Agreement, Art. 1.6). Distributors must also make their sales force available to Australian Gold for training and must conduct at least two (2) training sessions per year on the use and benefits of the Products to its customers. (Distributorship Agreement, Art. 1.6).

23. Australian Gold has expended substantial time and effort to preserve and protect the integrity of the distribution channels. Among other things, Australian Gold has (1) offered extensive training and instruction to each of its distributors and subdistributors and tanning salons regarding the proper channel of distribution of the Products; (2) held group and individual meetings with distributors to discuss the Distributorship Agreements and the need to sell Products only within the authorized distribution channels; (3) communicated on a daily basis with its distributors to remind them of their obligations to sell the Products within the authorized distribution channel; and (4) pursued legal action against numerous individuals and entities to enforce the restrictions regarding the distribution of Products.

24. Among other things, Australian Gold has sent cease and desist letters to persons and entities selling the Products on the Internet, terminated distributors found to have sold to Internet businesses and filed lawsuits against Internet businesses that have interfered with its distribution system and Distributorship Agreements.

25. As a direct result of these actions, the perceived value of the Products has remained high and sales have continued to increase. The Products' reputation has been enhanced as Products that are only available to consumers in legitimate tanning salons and not in discount outlets such as flea markets, beauty stores and the Internet.

**CHARMI HALL'S USE OF THE INTERNET TO ILLEGALLY SELL PRODUCTS**

26. At relevant times to this lawsuit, Hall has sold the Products on ebay.com, using at least two difference seller names, "Charmi 13" and "extremebargins4less".

27. Hall is using Australian Gold's intellectual property on the internet auctions that she has listed on ebay.com to sell the Products in an manner that is not permitted under Australian Gold's distribution system.

28. At relevant times to this lawsuit, Hall advertised and displayed the Products for sale on ebay using Australian Gold's copyrighted artwork. Almost every Product offered for sale by Hall was accompanied by either Australian Gold's artwork or a manipulated image with "extremebargins4less" superimposed over Australian Gold's original artwork.

29. At certain times relevant to this lawsuit, upon information and belief, the artwork of the Products and the descriptions were "cut and pasted" from Australian Gold's websites without permission from Australian Gold by Hall.

30. To confuse and mislead others even further, Hall changed how her auctions displayed the Products. Hall currently displays the Australian Gold photograph of the Product with her ebay seller name, "extremebargins4less" superimposed over the photograph, thereby falsely drawing an association and affiliation between the Products, Australian Gold and Hall. Each photograph of the Products gives the false impression that Hall is either an authorized reseller of the Products or that it is affiliated with, sponsored or endorsed by Australian Gold. A True and correct copies of sample pages from Hall's ebay auctions are attached hereto as *Exhibit D*.

**CHARMI HALL'S INTERFERENCE WITH AUSTRALIAN GOLD'S DISTRIBUTION SYSTEM**

31. Hall has obtained the Products and have resold them on the Internet.

32. Upon information and belief, Hall has obtained the Products, directly or indirectly, from one or more authorized distributors of the Products.

33. On or about April 16, 2004, Australian Gold sent a cease and desist letter to Hall, notifying her of its distribution system and the existence of the Distributorship Agreements. A true and correct copy of that letter is attached hereto as *Exhibit E.*

34. At that time, Hall was using the ebay seller name "Charmi 13."

35. On or about April 21, 2004, Australian Gold's counsel had a telephone conversation with Hall concerning her sale of the Products on ebay. Hall represented that she would sell her remaining inventory and would not make any further purchases of the Products.

36. Despite having notice of the existence of the Distributorship Agreements and her prohibition on the sale of Products to non-tanning salons, Hall has continued to purchase and sell the Products on the website and has changed her ebay seller name to extremebargains4less in an effort to conceal her identify from Australian Gold.

37. The auctions that Hall has listed under this new ebay seller name include artwork of the Products, including copyrighted artwork belonging to Australian Gold, with Hall's assumed business name "extremebargains4less" superimposed on Australian Gold's artwork.

38. All conditions precedent have occurred, been performed, were waived or excused.

**COUNT I –COPYRIGHT INFRINGEMENT**

39. Australian Gold incorporates by reference paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. Australian Gold is the exclusive owner of all of the copyrights for the labels of the Products, including the federally registered copyrights identified in Exhibit B. ("Copyrighted Works").

41. Upon information and belief, Hall copied Australian Gold's Copyrighted Works and has distributed and disseminated infringing copies of the Copyrighted Works, including on the Internet.

42. Upon information and belief, Hall knowingly and willfully created derivative works based upon Australian Gold's Copyrighted Works, and willfully publicly distributed the infringing derivative works.

43. Upon information and belief, to the extent that Hall did not directly infringe Australian Gold's exclusive rights with respect to the Copyrighted Works, Hall induced, caused and or materially contributed to the direct acts of infringement with knowledge of the infringing activity.

44. Hall had a direct financial benefit in the infringing activities and had the right and ability to supervise those activities, thus making her vicariously liable.

45. As a result of the conduct of Hall, Australian Gold is entitled to actual and statutory damages, Hall's profits, and preliminary and permanent injunctive relief against Hall to enjoin and restrain infringement of Australian Gold's Copyrighted Works.

## COUNT II – TRADEMARK INFRINGEMENT

46. Australian Gold incorporates by reference paragraphs one (1) through forty-five (45) as if fully set forth herein.

47. Australian Gold is the owner and/or licensee of certain registered and common law trademarks ("Marks") identifying its brand names and the Products. The Marks are identified in *Exhibit A*.

48. At relevant times to this lawsuit, Hall has used the Marks, without authorization or permission, on her ebay auctions.

49. Hall has manipulated photographs displaying Products on her ebay auctions by superimposing her assumed business name, "extremebargins4less", over photographs of the Products owned by Australian Gold, including the Copyrighted Works, thereby impermissibly suggesting a sponsorship, affiliation, endorsement or association between Australian Gold and Hall.

50. Upon information and belief, Hall has sold Products to consumers on the Internet without offering the proper instruction and use on the Products, thereby selling the Products outside of the quality control standards established by Australian Gold.

51. The conduct of Hall is likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Australian Gold and Hall or as to the origin, sponsorship or approval of the Products.

52. The conduct of Hall was willful and intentional.

53. The conduct of Hall constitutes trademark infringement pursuant to 15 U.S.C. 1114 and 1125(a), for which Hall is liable to Australian Gold for actual damages, profits, statutory damages and attorney fees.

## COUNT III - UNFAIR COMPETITION UNDER THE LANHAM ACT

54. Australian Gold incorporates by reference paragraphs one (1) through fifty-three (53) as if fully set forth herein.

55. Through manipulation of the photographs on its website, Hall has violated Section 43(a) of the Lanham Act by impermissibly suggesting a sponsorship, affiliation, endorsement or association between Australian Gold and Hall, or as to the origin, sponsorship, or approval of the Products.

56. The conduct of Hall was willful and intentional.

57. The conduct of Hall is likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Australian Gold and Hall or as to the origin, sponsorship or approval of the Products and constitutes unfair competition under Section 43(a) of the Lanham Act, for which Hall is liable to Australian Gold for actual damages, profits, statutory damages and attorney fees.

**COUNT IV- TRADEMARK DILUTION**

58. Australian Gold incorporates by reference paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

59. Australian Gold's Marks are distinctive and famous.

60. Hall began using the Marks after they became famous.

61. The conduct of Hall, as set forth herein, has caused dilution of the distinctive quality of Australian Gold's Marks and have diluted the value of the Marks.

62. Hall intended to trade on the goodwill and reputation of Australian Gold by using the Marks in this manner.

63. The conduct of Hall, as set forth herein, was willful and intentional.

64. Hall has been and will continue to be unjustly enriched by their unlawful conduct and Australian Gold has suffered damages to its goodwill and reputation.

65. Australian Gold is entitled to its actual damages and statutory damages for the conduct of Hall.

**COUNT V– TORTIOUS INTERFERENCE WITH CONTRACT**

66. Australian Gold incorporates by reference paragraphs one (1) through sixty-five (65) as if fully set forth herein.

67. At all relevant times to this lawsuit, Australian Gold had valid and enforceable Distributorship Agreements with its authorized distributors.

68. Hall is aware of Australian Gold's Distributorship Agreements with its authorized distributors and the restrictions contained therein.

69. Upon information and belief, Hall has intentionally induced unknown authorized distributors to breach the Distributorship Agreements with Australian Gold by ordering the Products from "John Doe" distributors and then selling the Products over the Internet to the general public.

70. Upon information and belief, Hall is using false pretenses to induce authorized distributors to sell her Products.

71. The conduct of Hall is willful, malicious and unjustified and such interference is neither privileged nor excusable.

72. Australian Gold has been damaged by the conduct of Hall.

73. The conduct of Hall constitutes tortious interference with the Distributorship Agreements for which Hall, and any later identified person or entity who has acted in concert or participation with her is liable to Australian Gold for actual and punitive damages in an amount to be proven at trial.

## COUNT VI - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

74. Australian Gold incorporates by reference paragraphs one (1) through seventy-three (73) as if fully set forth herein.

75. Australian Gold has enjoyed long and successful business relationships with its authorized distributors.

76. The conduct of Hall has interfered with these relationships and constitutes tortious interference with Australian Gold's prospective business relationships with these distributors causing Australian Gold to suffer damages.

77. The conduct of Hall was done by wrongful means and/or for the sole purpose of harming Australian Gold and its distribution system, for which Hall, and any later identified person or entity who has acted in concert or participation with her, is liable to Australian Gold for actual and punitive damages in an amount to be proven at trial.

**COUNT VIII- STATE LAW TRADEMARK INFRINGEMENT**

78. Australian Gold incorporates by reference paragraphs one (1) through seventy-seven (77) as if fully set forth herein.

79. The conduct of Hall is likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Australian Gold and Hall or as to the origin, sponsorship or approval of the Products.

80. The conduct of Hall, as set forth above, constitutes trademark infringement under state law for which Hall is liable to Australian Gold for its actual damages and injunctive relief.

**COUNT IX - FALSE ADVERTISING**

81. Plaintiffs incorporate by reference paragraphs one (1) through eighty (80) as if fully set forth herein.

82. Hall's advertisement of the Products on the website is false because her auctions display pictures of Australian Gold's products with Hall's assumed business name superimposed over the pictures.

83. The conduct of Hall, as set forth above, constitutes false advertising under the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT X - INJUNCTIVE RELIEF**

84. Plaintiffs incorporate by reference paragraphs one (1) through eighty-three (83) as if fully set forth herein.

85. Hall's conduct has caused Australian Gold irreparable harm.

86. The Products are marketed as premium, exclusive products available only in tanning salons and hair care salons that offer on-premises tanning. Hall has jeopardized and undermined Australian Gold' distribution system by selling these Products on ebay.com and interfering with Australian Gold's distribution system. Monetary damages alone are insufficient to compensate Australian Gold. Injunctive relief is necessary to ensure that Australian Gold's distribution channels and its intellectual property are preserved.

87. Australian Gold requests that Hall be enjoined from interfering with any Distributorship Agreement, including the purchase and sale of Products, and from otherwise interfering with Australian Gold's distribution channel and its contractual and business relationships.

88. Australian Gold requests that Hall be enjoined from infringing on any of Australian Gold's Marks, including using the Marks on ebay.com, in any manner that is likely to cause confusion or mistake as to the affiliation, connection or association of Australian Gold and Hall or as to the origin, sponsorship or approval of the Products. 15 U.S.C. §1116(a).

89. Australian Gold requests that Hall be enjoined from infringing, using, copying or otherwise exploiting Australian Gold's Copyrighted Works, including Australian Gold's federally registered copyrights for the labels for the following Products: Forever After, Cheeky Brown, Body Kisses, Bearly Legal, Unforgiven, Sun Dreams, Simply Divine, Pink Diamond, and Free Spirit, and any other Copyrighted Works, in any manner whatsoever, including the use of the Copyrighted Works on ebay.com.

**COUNT XI - CONSPIRACY AND CONCERT OF ACTION**

90. Australian Gold incorporates by reference paragraphs one (1) through eight-nine (89) as if fully set forth herein.

91. Upon information and belief, Hall has conspired with unknown distributors and other persons to illegally obtain the Products and sell them on the Internet.

92. The conduct of Hall with unknown third parties constitutes conspiracy and concert of action to tortiously interfere with the Distributorship Agreements and Australian Gold's business relationships, for which each conspirator is liable to Australian Gold for damages.

WHEREFORE, Australian Gold, Inc., by counsel, respectfully requests the Court to:

A. Enter judgment in its favor and against Hall on all claims and award Australian Gold actual damages in an amount to be proven at trial;

B. Award Australian Gold punitive damages for Hall's tortious interference with the Distributorship Agreements and business relationships;

C. Award Australian Gold profits and treble damages for Hall's infringement of the Marks pursuant to 15 U.S.C. §1117(a);

D. Award Australian Gold actual damages and profits, and statutory damages for Hall's copyright infringement pursuant to 17 U.S.C. §504;

E. Preliminarily and permanently enjoin Hall, and any other person or entity acting in concert or participation with her, from interfering with any Distributorship Agreement, including the purchase and sale of Products, and from otherwise interfering with Australian Gold's distribution channel and its contractual and business relationships;

F. Preliminarily and permanently enjoin Hall, and any other person or entity acting in concert or participation with her, from infringing on any of Australian Gold's Marks, including using the Marks on ebay.com or using any Mark in any manner that is likely to cause confusion or mistake as to the affiliation, connection or association of Australian Gold and Hall or as to the origin, sponsorship or approval of the Products;

G. Preliminarily and permanently enjoin Hall, and any other person or entity acting in concert or participation with her, from infringing, using, copying or otherwise exploiting Australian Gold's Copyrighted Works, including Australian Gold's federally registered copyrights for the labels for the following Products: Forever After, Cheeky Brown, Body Kisses, Bearly Legal, Unforgiven, Sun Dreams, Simply Divine, Pink Diamond and Free Spirit, and any other Copyrighted Works, in any manner whatsoever, including the use of the Copyrighted Works on ebay.com;

H. Award Australian Gold pre-judgment interest, costs, attorney fees; and

I. Award Australian Gold all other appropriate relief.

Respectfully submitted,

ICE MILLER LLP

Michael A. Wukmer, Esq.
Scott Matthews, Esq.
ICE MILLER LLP
One American Square, Suite 3100
Indianapolis, IN 46282-0200
(317) 236-2179 Phone
(317) 529-5418 Fax
michael.wukmer@icemiller.com
scott.matthews@icemiller.com

*Attorneys for Australian Gold, Inc.*

INDY 1666623v.1